NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANGELO MANZUETA, | : | |
| | : | Civil Action No. 11-0004 (DMC) |
| Petitioner, | : | |
| | : | |
| v. | : | O P I N I O N |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

APPEARANCES:

Angelo Manzueta, Petitioner, Pro Se
J#201003770
Essex County Correctional Facility
354 Doremus Avenue
Newark, New Jersey 07105

CAVANAUGH, District Judge

Petitioner, Angelo Manzueta ("Petitioner"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Essex County Correctional Facility in Newark, New Jersey, pending his removal from the United States. On or about January 3, 2011, Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his mandatory detention pending removal proceedings as unconstitutional. Petitioner brings this action against Roy L. Hendricks, Warden of the Essex County Correctional Facility; John Tsoukaris, Newark Field Office Director for Detention and Removal; John T. Morton, Acting

Assistant Secretary of ICE; Janet Napolitano, Secretary of the DHS; and Eric Holder, United States Attorney General as the named party respondents (hereinafter referred to as "Respondents" or the "Government") in this action. For the reasons stated below, this petition for habeas relief will be denied because mandatory detention pending completion of removal proceedings has been held constitutionally permissible. See Demore v. Kim, 538 U.S. 510 (2003).

I. BACKGROUND

Petitioner is a native and citizen of the Dominican Republic, who was admitted into the United States as lawful permanent resident in May 1994. (Docket Entry No. 1, Pet. at ¶ 15.) He admits that he was convicted on November 17, 2003, for possession of cocaine with intent to distribute, for which he was sentenced to five years probation. (Id. at ¶ 17.) Petitioner violated his probation and was sentenced to three years and nine months in prison. (Id.) ICE picked Petitioner up from prison upon completion of his sentence on February 19, 2010 on the grounds that he was in the United States without being admitted or paroled under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), and that his drug charges constituted grounds for removal under INA §§ 212(a)(2)(A)(i)(I) and (a)(2)(C). (Declaration of Charles S. Graybow ("Graybow Decl."), Ex. A at 1-5(Notice to Appear, served on Feb. 19, 2010; Warrant for Arrest of Alien, served on Feb. 19,

2010).)   ICE also served Petitioner with a Notice of Custody Determination, which informed him that ICE would continue to detain him during his removal proceedings.  (Graybow Decl., Ex. A at 6 (Notice of Custody Determination, served on Feb. 19, 2010).)

Petitioner first appeared before an immigration judge ("IJ") at a master calendar hearing on February 25, 2010.  He appeared pro se and requested an adjournment in order to find an attorney. (Graybow Decl., Ex. B (Wolf Decl.) ¶ 5.)  Thereafter, Petitioner appeared ten more times before an IJ and requested adjournments for various reasons.  The Government jointly requested an adjournment on four of those occasions.  In addition, on a separate occasion, the Government was responsible for bringing Petitioner to court past the scheduled time and the hearing had to be rescheduled. (Id. ¶¶6-18.)  Finally, at the merits hearing held on February 25, 2011, the IJ ordered Petitioner removed from the United States. Petitioner reserved his right to appeal to the Board of Immigration Appeals ("BIA"). (Id. at ¶ 19.)

The Court has not been advised whether Petitioner has appealed to the BIA, but will assume without deciding that the immigration judge's order of removal has not yet become final.  See 8 U.S.C. § 1101(a)(47)(B) (stating that order of removal becomes final upon affirmance by the BIA or expiration of time to seek review by the BIA).

Petitioner filed the instant petition for writ of habeas

corpus pursuant 28 U.S.C. § 2241 on January 3, 2011. (Docket Entry No. 1.) Though it is not entirely clear from the petition, it appears that Petitioner is arguing that his request should be granted because: (1) prolonged detention without a hearing violates the due process clause and the INA; and (2) under the rule of "constitutional avoidance", § 1226(c) must be read not to authorize prolonged mandatory detention when the individual has a "substantial" claim to relief from removal.

Respondents filed their answer to the petition on March 4, 2011. Respondents argue that the petition should be denied because: (1) Petitioner's mandatory detention does not violate due process (or the INA) because he has prolonged his detention by obtaining eleven continuances to retain counsel and fight the Government's effort to deport him; (2) nothing in §1226(c) precludes it from being applied to an alien with a "substantial" challenge to removal; (3) Petitioner wrongly relies on the Supreme Court's decision in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), to challenge his detention as <u>Zadvydas</u> applies to aliens who, unlike Petitioner, have final removal orders but are unremovable; and (4) Petitioner is being properly detained and therefore has no grounds to be released or to receive a hearing where the Government bears the burden of justifying his continued detention.

## II. DISCUSSION

### A. Standard of Review

As stated earlier, Petitioner brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has subject matter jurisdiction over this petition because Petitioner is being detained within its jurisdiction at the time he filed his petition, and because Petitioner asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### B. Relevant Statutory and Case Law Authority

Petitioner admits that he is being held pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the INA. This statute provides for the mandatory detention,

without bond while removal proceedings are pending, of those aliens who committed certain enumerated categories of criminal and other offenses. Specifically, Title 8 of the United States Code, Section 1226 states:

> § 1226. Apprehension and detention of aliens
>
> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be ... detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
> > (1) may continue to detain the arrested alien;
> > [or] may release the alien on-
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > > (B) conditional parole....
>
> (c) Detention of criminal aliens.
> > (1) Custody. The Attorney General shall take into custody any alien who ...
> > > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> > > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
> > > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
> > > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
> > (2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521

>      of Title 18 that release of the alien from custody
>      is necessary to provide protection to a witness, a
>      potential witness, a person cooperating with an
>      investigation into major criminal activity, or an
>      immediate family member or close associate of a
>      witness, potential witness, or person cooperating
>      with such an investigation, and the alien satisfies
>      the Attorney General that the alien will not pose a
>      danger to the safety of other persons or of
>      property and is likely to appear for any scheduled
>      proceeding. A decision relating to such release
>      shall take place in accordance with a procedure
>      that considers the severity of the offense
>      committed by the alien.

8 U.S.C. § 1226.

In other words, detention under § 1226(a) is discretionary and requires individualized bond hearings, while detention under § 1226(c) is mandatory and does not provide for any bond hearing. Both provisions apply to "pre-removal-order detainees," that is, to those aliens who are in the midst of their removal proceedings and thus whose removal orders have not become "final." Section 1226(a) provides the Attorney General (or the DHS)[1] with the discretionary authority to release an alien on bond or conditional parole pending completion of removal proceedings. Under § 1226(a), an alien may be released where he can show, to the satisfaction of the DHS/ICE, that he is not a flight risk or a danger to the community. 8 C.F.R. § 236.1(c)(8). A similar standard applies before the Immigration Judges and BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA

---

[1] Pursuant to the Homeland Security Act of 2002, all three immigration functions vested in the Attorney General, with a few exceptions, were transferred to the Secretary of the DHS. The Attorney General has delegated his discretionary custody redetermination authority to the Immigration Judges and the BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

2006).

Under the mandatory detention statute, however, immigration courts are without jurisdiction to determine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond. 8 C.F.R. § 1003.19(h)(2)(i)(D)(2008). An alien may request a Joseph hearing before an immigration judge to determine if the alien is properly included in the mandatory custody provision, pursuant to Matter of Joseph, 22 I.& N. Dec. 799 (BIA 1999) and 8 C.F.R. § 1003.19(h)(2)(ii).

Once the removal order becomes "final," the alien's "removal period" begins to run. Specifically, the "removal period" starts on the latest of the following: (1) the date when the order of removal issued by an IJ becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien. Detention during this 90- day removal period is mandatory. Section 1231(a)(1)(c), however,

8

provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(c). Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. § 1231(a)(6). However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 533 U.S. 678, 689 (2001).

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Moreover, no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(C). Consequently, an alien who, during his presumptive six-month Zadvydas-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months. See, e.g., Wang v. Carbone, No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and Sango-Dema v. District Director, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in Zadvydas, causing a quasi-tolling.

Thus, "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

C. The Issue of Mandatory Detention

Petitioner asserts that his mandatory detention under § 1226(c) violates due process because it is an unreasonably prolonged detention. He seeks a bond hearing to be released under supervision while his removal proceedings are ongoing.

The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. See 8 U.S.C. § 1226(c)(2).[2] Further, an alien detained under § 1226(c) is not afforded a bond hearing before an IJ, whereas a noncriminal alien, who is detained under § 1226(a), is given such a hearing. See 8 U.S.C. § 1226(a), (c). Consequently, Petitioner, as an alien detained under § 1226(c), does not have an opportunity to show that he does not pose a danger to the community or a flight risk to be released on bond. See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution. In Demore, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him. The Supreme Court held that detention of lawful permanent residents during removal proceedings is constitutionally permissible, even

---

[2] Section 1226(c)(2) reads: The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

11

when there has been no finding that they are unlikely to appear for their deportation proceedings. Id. at 523-24. In doing so, the Court noted that detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

However, the Supreme Court's holding in Demore, as noted in Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "[narrow] ...grounded in repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course." Id. at 664. In Demore, the Supreme Court recognized that § 1226(c) was intended only to govern "detention of deportable criminal aliens *pending their removal proceedings*," which the Court stressed typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Demore, 538 U.S. at 528-30 (emphasis in original).

D. Petitioner Is Not Entitled to Release from Detention

Petitioner challenges his mandatory detention under 8 U.S.C. § 1226(c) on the grounds that it violates his rights to substantive and procedural due process. The petition plainly states on its face that Petitioner's removal proceedings are not yet final and

12

though Petitioner was ordered removed by the IJ on February 25, 2001, the Court has not been advised whether Petitioner has appealed to the BIA and if so, whether that appeal is still pending. Therefore, as stated above, the Court will assume without deciding that the immigration judge's order of removal has not yet become final. See 8 U.S.C. § 1101(a)(47)(B) (stating that order of removal becomes final upon affirmance by the BIA or expiration of time to seek review by the BIA). As such, this Court concludes that the United States Supreme Court's holding in Demore forecloses Petitioner's constitutional challenge to his continued mandatory detention.

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226 (INA § 236). Section 1226(a) gives the Attorney General discretion to arrest and detain an alien pending removal proceedings and to release the alien on bond. Section 1226(b) gives the Attorney General discretion to revoke a bond or parole under § 1226(a). By contrast, however, § 1226(c) requires that aliens with certain enumerated criminal convictions be detained pending removal proceedings. In particular, § 1226(c) provides for the detention of criminal aliens who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]." 8 U.S.C. § 1226(c)(1)(B).

Here, Petitioner does not challenge the determination that his

detention is governed by 8 U.S.C. § 1226(c)(1)(B), as a deportable alien convicted of an aggravated felony whose removal proceedings are not yet final.[3] As stated in the previous section of this Opinion, the Supreme Court has held that the detention of an alien pursuant to the no-bail provision under § 1226(c) does not violate due process under the Fifth Amendment. DeMore, supra. The Supreme Court reaffirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Court concluded that the mandatory detention provision under § 1226(c) furthered the government's legitimate purpose of preventing aliens from fleeing before the removal proceedings are completed[4], and that such detention would be limited to a finite period of time generally needed for completion of removal proceedings. Id. at 529-531.

The Supreme Court, however, did not set a temporal time limit on the detention of an alien pending removal proceedings,

---

[3] Under 8 U.S.C. § 1231, the government may detain an alien subject to a final order of removal. Section 1231(a)(6) provides, in pertinent part: An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ... ."

[4] The Court also acknowledged that "in adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." Kim, 538 U.S. at 528.

14

acknowledging that detention under § 1226(c) was typically short in duration. Id. at 527-28 (distinguishing its decision in Zadvydas with respect to detention under § 1231, by emphasizing that detention under § 1226(c) had an obvious termination point and that such confinement was generally brief). See also Contant v. Holder, 352 Fed. Appx. 692, 694 (3d Cir. 2009)(where a preremoval-order petitioner is being detained pending a decision on whether he is to be removed from the United States, there is no indication that petitioner cannot be deported to his country of origin following an unfavorable removability decision).

Moreover, while there may be legitimate concerns that due process necessitates an individualized custody evaluation for aliens who have been in detention pending lengthy removal proceedings, the Government is not obligated under the Due Process Clause "to employ the least burdensome means to accomplish its goal" in "dealing with deportable aliens." Demore, 538 U.S. at 528.

In this case, Petitioner has been detained for approximately eleven months. It appears, and Petitioner does not dispute, that during those eleven months, he requested and received several continuances. Specifically, he requested eleven adjournments of the proceedings before the IJ. Though the government also requested several adjournments, none of the adjournments were for longer than one week and on most of the occasions when Respondents

requested an adjournment, Petitioner also sought an adjournment for longer time than the Government was requesting.

Further, Petitioner does not allege any inordinate delays by the DHS/ICE. Any delays in his proceedings were caused predominately by Petitioner himself requesting continuances. Accordingly, this Court finds that Petitioner has failed to state any violation of federal statutory or constitutional law respecting his mandatory detention pending removal proceedings. Therefore, his petition seeking release from detention must be dismissed at this time.[5]

To the extent Petitioner is arguing that § 1226(c) does not apply to those individuals who have a "substantial challenge against removability", it is unclear as to the relevance that argument would have in this case. Petitioner does not allege that he even has a "substantial challenge" to his removability and it does not appear from the record that he request a Joseph hearing.

That leaves only the issue of bond hearings, which are inapplicable to aliens like Petitioner, detained under Section 1226(c). In addition, the Supreme Court observed in Demore v. Kim

---

[5] The petition will be dismissed without prejudice to Petitioner renewing his application. The Court is aware that Petitioner's detention period may be approaching or even over one year. However, as stated above, Petitioner has not informed the Court during this time as to whether his removal proceedings remain ongoing, whether he is now subject to a final order of removal, which would change the statute governing his detention, (see Section II.B. of this Opinion, supra), or whether he is appealing entry of a removal order by an immigration judge before the BIA. Thus, to the extent that Petitioner can show inordinate delays by the Government that has perpetuated his detention, which is not evident from the instant petition, Petitioner may file a new application for habeas relief under § 2241.

that the fact of the prolonged detention does not entitle an alien to individualized bond hearings if the alien "himself had requested a continuance of his removal hearing." Id. at 530. Consequently, Petitioner's request for a bond hearing as provided under § 1226(a) is without merit and will be denied.

E. Case Law Relied Upon by Petitioner

The Court's discussion would not be complete if the Court overlooked the immigration cases invoked by Petitioner. First, Petitioner's reliance on Zadvydas and Ngo v. INS, 192 F.3d 390 (3d Cir. 1999) is misplaced because these cases involved individuals who had final orders of removal but whose removal could not be effectuated. Here, as stated above, Petitioner is a pre-removal order alien subject to the mandatory detention provision under § 1226(c). Thus, there is no indication that Petitioner cannot be deported to his country of origin following entry of a final removal order. See Demore v. Kim, 538 U.S. at 528; Contant, 352 Fed. Appx. at 694. Moreover, Petitioner has failed to demonstrate that his detention has been unreasonably prolonged by the Government to justify a bond hearing.

Petitioner also cites the following case law, which held that prolonged mandatory detention under § 1226(c) raises serious constitutional problems: Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005); Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942, 948 (9th Cir. 2008); Ly v. Hansen, 351 F.3d 263, 271-72

17

(6th Cir. 2003); Akinola v. Weber, 2010 WL 376603 (D.N.J. January 26, 2010); Madrane v. Hogan, 520 F.Supp.2d 654, 665 (M.D. Pa. 2007); Alli v. Decker, 644 F.Supp.2d 535, 539 (M.D.Pa. 2009); Nunez-Pimentel v. U.S. Dep't of Homeland Security, 2008 WL 2593806, at *3 (M.D.Pa. November 25, 2008); Occelin v. Dist. Dir. For ICE, 2009 WL 1743742 at *3 (M.D.Pa. 2009); Wilkis v. U.S. Dep't of Homeland Security, 2008 WL 4820654, at *2 (M.D.Pa. November 3, 2008); Sengkeo v. Hogan, 670 F.Supp.2d 116, 125 (D.Mass. 2009); Bourguignon v. MacDonald, 667 F.Supp.2d 175, 182-83 (D.Mass. 2009); Fuller v. Gonzales, 2005 WL 818614, at *5 (D.Conn. April 8, 2005); Uritsky v. Ridge, 286 F.Supp. 2d 842, 846-47 (E.D. Mich. 2003); and Parlak v. Baker, 374 F.Supp. 2d 551, 559-62 (E.D. Mich. 2005). However, Petitioner declines to refer to the Third Circuit's ruling in Contant, which held that an alien's lengthy pre-removal order detention was not indefinite, and thus, not in violation of due process.

Indeed, Petitioner does not face permanent detention like the aliens in Zadvydas and Ly. Much to the contrary, Petitioner does not allege that he cannot obtain his release to the Dominican Republic at any time, and therefore, he does not face the prospect of indefinite detention. Moreover, in all of the cases cited by Petitioner, the petitioners had been detained for a period of time significantly longer than Petitioner in this instance or contained unique circumstances not present here. See, e.g. Tijani, 430 F.3d

1241 (two years and eight months); Casas-Castrillon, 535 F.3d 942 (seven years); Ly, 351 F.3d 263 (eighteen months); Akinola, 2010 WL 376603 (two years); Madrane, 520 F.Supp.2d 654 (twenty months); Nunez-Pimentel, 2008 WL 2593806 (three years); Occelin v. Dist. Dir. For ICE, 2009 WL 1743742 (eighteen months); Wilks, 2008 WL 4820654 (eighteen months). None of these cases are binding on this Court, and this Court, respectfully, does not find them persuasive in any event.

In sum, this Court does not find any basis in the instant case to depart from the express requirement of mandatory detention under § 1226(c), as upheld in Demore v. Kim. Therefore, Petitioner's application for habeas relief from mandatory detention and his request for a bond hearing are dismissed without prejudice to his bringing a new action should he be able to demonstrate circumstances of indefinite detention and inordinate delays perpetuated by the Government.

III. CONCLUSION

Based upon the foregoing, the habeas petition seeking Petitioner's release from detention pursuant to a bond hearing pending a final order of removal is dismissed without prejudice. An appropriate Order accompanies this Opinion.

Dated:

*[signature]*
DENNIS M. CAVANAUGH
UNITED STATES DISTRICT JUDGE